UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------- ----------------------------------x
J.H., an infant by his mother and natural guardian
CHARLENE HUMPHREYS, and CHARLENE
HUMPHREYS Individually,

                               Plaintiffs,       **OPINION AND ORDER**

  - against -                                  No. 18-CV-4399 (CS)

CITY OF MOUNT VERNON, MOUNT VERNON
POLICE DEPARTMENT, POLICE OFFICER
HUGHES, and POLICE OFFICER HUNT,

                               Defendants.
------------------------------------ -------------------------x

Appearances:

Christina T. Hall
Law Office of Christina T. Hall & Associates, PLLC
Harrison, New York
*Counsel for Plaintiffs*

Andrew C. Quinn
Steven J. Bushnell
Quinn Law Firm
White Plains, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is the unopposed motion to dismiss of Defendants City of Mount Vernon, Mount Vernon Police Department, and Police Officer ("PO") Ryan M. Hughes and PO James W. Hunt (collectively, "Defendants"). (Doc. 25.)

## I.    BACKGROUND

      I accept as true the facts, but not the conclusions, set forth in Plaintiffs' Second Amended Complaint. (Doc. 24 ("SAC").)

A.     **Facts**

On June 20, 2017, at approximately 4:30 p.m., Defendant POs Hughes and Hunt responded to a call regarding a domestic incident at the home of infant Plaintiff J.H. (SAC ¶ 9.) PO Hughes told J.H. to put his hands behind his back so that J.H. could be handcuffed but neither officer told J.H. why he was being handcuffed. (*Id.* ¶ 10.)[1] While handcuffing J.H., PO Hughes pushed J.H., and J.H. fell onto broken glass. (*Id.*) As a result, J.H. suffered a corneal abrasion, subconjunctival hemorrhaging, and lacerations to his face and body. (*Id.*) Plaintiffs also allege that "J.H. was hit on the head, eye and ribs by one the [*sic*] Defendant," (*id.*), but it is unclear if this was the same use of force as the push because Plaintiffs do not provide any additional details, and Plaintiffs' allegation that "Hughes violently struck [J.H.] and pushed him to the ground without just cause" suggests that this might have been a single act of force, (*see id.* ¶ 18). When PO Hughes used force against J.H., PO Hunt was present but did not intervene. (*Id.* ¶ 10.)

J.H. was then transported to Montefiore Mount Vernon Hospital and treated for his injuries. (*Id.* ¶ 11.) After J.H. was discharged, he was taken to the Mount Vernon Police Department in a police car and arraigned the next morning on charges unspecified in the SAC. (*Id.* ¶ 12.)

B.     **Procedural History**

On March 23, 2018, Plaintiffs filed a Complaint in New York state court. (Doc. 1-1.) On May 17, 2018, Defendants removed the action to this Court. (Doc. 1.) On May 31, 2018, Defendants filed a letter requesting a pre-motion conference and stating their intention to move

---

[1] In the initial case caption, J.H. was referred to by a female pronoun, but since then, J.H. has consistently been referred to by male pronouns.

to dismiss Plaintiffs' Complaint for failure to state a claim. (Doc. 8.) The Court agreed that Plaintiffs' Complaint lacked sufficient facts to support any claims, but because the Complaint had been drafted for state, not federal, court, Plaintiffs were granted leave to amend, and Defendants' request for a conference was denied. (Doc. 10.) After Plaintiffs requested and the Court granted an extension, (Docs. 13, 14), Plaintiffs filed their First Amended Complaint on July 6, 2018, (Doc. 15). But Plaintiffs' counsel filed the First Amended Complaint against the wrong party and did not correct the filing error until July 9, 2018. (Doc. 16.)

On July 18, 2018, Defendants filed another letter requesting a pre-motion conference and stating their intention to move to dismiss Plaintiffs' First Amended Complaint. (Doc. 17.) The Court set a pre-motion conference for August 10, 2018. (Doc. 18.) But on the eve of that conference, without having filed a response to Defendants' letter in violation of this Court's order, Plaintiffs' counsel requested an adjournment of the conference. (Doc. 19.) The Court granted the adjournment, (Doc. 20), and held the pre-motion conference on August 13, 2018. (Minute Entry dated Aug. 13, 2018.)

At the pre-motion conference, the Court granted Plaintiffs leave to amend again no later than September 4, 2018. (*Id.*) On September 5, 2018, after the deadline had passed, Plaintiffs' counsel asked for an extension to September 7, 2018, (Doc. 22), which I granted, (Doc. 23). Plaintiffs' counsel, however, did not file the SAC until September 10, 2018. (Doc. 24.) Further, Plaintiffs' SAC was deficiently filed on ECF because, among other reasons, it was filed after the due date – and to date, Plaintiffs' counsel has not sought permission for the late filing or corrected the other filing errors.

In their SAC, Plaintiffs brought the following claims: (1) excessive force against PO Hughes under 42 U.S.C. § 1983, (2) failure to intervene against PO Hunt under § 1983,

(3) *respondeat superior* liability under New York state law against the City of Mount Vernon and the Mount Vernon Police Department, (4) battery against PO Hughes, (5) assault against PO Hughes, (6) intentional infliction of emotional distress ("IIED") against PO Hughes, and (7) negligent deprivation of society and services against all Defendants. (SAC ¶¶ 14-53.)

On October 4, 2018, Defendants moved to dismiss the SAC, (Doc. 25), and filed a memorandum of law in support of their motion, (Doc. 27 ("Ds' Mem.")). Plaintiffs never opposed the motion. Defendants filed a reply memorandum in further support of their motion on November 16, 2018. (Doc. 28 ("Ds' Reply").)

## II. LEGAL STANDARD

### A. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

4

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

### B. **Documents Properly Considered**

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). "Under Federal Rule of Evidence 201, a court may take judicial notice . . . of a fact that is not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 397 (S.D.N.Y. 2015) (internal quotation marks and alterations omitted). Applying these principles, "courts have taken judicial notice of incident reports, arrest reports, police reports, and similar materials on a motion to dismiss, not for the truth of their contents, but rather to establish their existence." *Id.*; *see Corley v. Vance*, No. 15-

5

CV-1800, 2019 WL 1382299, at *7 (S.D.N.Y. Mar. 27, 2019); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (documents can only be considered for what they state, not to prove the truth of their contents).

Defendants offer five exhibits in support of their motion to dismiss. (*See* Doc. 26 ("Bushnell Decl.").) First is the SAC, (*id.* Ex. A), which obviously I may consider. *Condit v. Dunne*, 317 F. Supp. 2d 344, 357 (S.D.N.Y. 2004). Next, Defendants provide two exhibits related to J.H.'s underlying arrest: (1) the Mount Vernon Police Department's domestic incident report, (*id.* Ex. B), and (2) the supporting deposition of Ms. Humphreys made in connection with J.H.'s arrest, (*id.* Ex. C). I may consider J.H.'s arrest documents, but only for the fact of their existence, not for the truth of their contents, *see Alvarez*, 95 F. Supp. 3d at 397, and their mere existence is not relevant on this motion.

Defendants also furnish J.H.'s testimony from a hearing held pursuant to New York General Municipal Law § 50-h, (Bushnell Decl. ¶ 6; *id.* Ex. D), and a screen shot of a message Sergeant Jennifer Carpenter sent to an individual named Phillip Leonti, (*id.* Ex. E). Defendants offer no specific justification as to why I should consider these documents other than reciting the general principle that I may take judicial notice of documents outside of the complaint and consider documents attached or integral to the SAC. But Defendants did not and could not argue that the 50-h testimony or the message were either attached to or integral to the complaint. Nor did they or could they argue that either exhibit is properly subject to judicial notice. "[C]ourts in this circuit typically decline to consider 50-h testimony submitted by defendants when ruling on a Rule 12(b)(6) motion," *In re Orr v. City of N.Y.*, No. 17-CV-2662, 2018 WL 3222534, at *2 (S.D.N.Y. July 2, 2018); *see Gurrieri v. County of Nassau*, No. 16-CV-6983, 2018 WL 6590564, at *5 (E.D.N.Y. Dec. 14, 2018), and I will do the same. I also disregard the screenshot, which in

6

any event contains hearsay. Accordingly, I do not consider Exhibits D and E of the Bushnell Declaration.

## III. DISCUSSION

### A. Mount Vernon Police Department

Defendants first argue (in a footnote) that the Mount Vernon Police Department cannot be liable under any theory because it is not a suable entity under New York law. (Ds' Mem. at 1 n.1.) "Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) (collecting cases). The Mount Vernon Police Department is a department of the City of Mount Vernon, and therefore it does not have a legal identity of its own and cannot be sued. Accordingly, all claims against the Mount Vernon Police Department are dismissed.

### B. Timeliness

Defendants next argue that Plaintiffs' SAC has no legal force or effect because it was filed three days late and filed incorrectly on ECF. (Ds' Mem. at 8-9.) Indeed, Plaintiffs' counsel missed both the original and extended deadlines for filing the SAC, and even then entered a deficient filing on ECF that she has not corrected to date. Plaintiffs' counsel seems to have missed virtually every deadline set by the Court in this case, and I am troubled by Plaintiffs' counsel's inability to follow this Court's orders. Defendants cite *Rose v. City of Waterbury*, No. 12-CV-291, 2013 WL 3967649, at *2 (D. Conn. July 31, 2013), for the proposition that where leave to amend is required and not in effect as of the date of filing, the complaint is without force and effect, (Ds' Mem. at 8). Here, Plaintiffs had leave to amend but did not do so timely. Under Federal Rule of Civil Procedure 6(b), I could extend the time for filing, even *nunc pro tunc*, if

there were good cause or excusable neglect. *See* Fed. R. Civ. P. 6(b). Because Plaintiffs have not opposed the motion, no good cause or excusable neglect is apparent.[2] I thus could disregard the SAC, but in an excess of caution I will address the merits.[3] *See Masterson v. NY Fusion Merch., LLC*, 300 F.R.D. 201, 205 (S.D.N.Y. 2014) (court *sua sponte* granted *nunc pro tunc* extension after complaint was filed four days late).

### C. Excessive Force, Assault, and Battery

Plaintiffs allege that PO Hughes hit and pushed J.H., causing him to fall on broken glass, in violation of J.H.'s "constitutional right to be free from excessive and unreasonable force." (SAC ¶¶ 10, 15.)[4] Plaintiffs also bring state law claims of battery and assault against PO Hughes arising from the same conduct. (*Id.* ¶¶ 31-40.) Because "claims under § 1983 for use of excessive force, and under state law for assault and battery, stemming from [a plaintiff's] arrest . . . are substantially identical," I will consider the excessive force, battery, and assault claims together. *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 519 (S.D.N.Y. 2013) (internal quotation marks omitted); *see Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (summary order) ("[E]xcept for § 1983's requirement that the tort be committed under color of

---

[2] Defendants candidly admit that on September 9, 2019, Plaintiffs' counsel emailed them the SAC and said she was having difficulty filing the SAC electronically. (Ds' Mem. at 8.) That might excuse the delay between September 9 and September 10, but there is no explanation for the delay between September 7 and September 9.

[3] Were I to disregard the SAC and consider only the First Amended Complaint, (Doc. 16), the only surviving claim would be the same one.

[4] The SAC does not cite to any constitutional provision, but I assume the § 1983 claim is brought under the Fourth Amendment.

8

state law, the essential elements of excessive force and state law assault and battery claims are substantially identical.") (internal quotation marks and alterations omitted).

Defendants do not assert that Plaintiffs fail to state claims for excessive force, battery, or assault, but rather they move to dismiss those claims on the ground that PO Hughes is entitled to qualified immunity. (Ds' Mem. at 10-13.) "A police officer is qualifiedly immune from suit if (1) his conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for the officer to believe his conduct did not violate clearly established constitutional rights." *Bolden v. Village of Monticello*, 344 F. Supp. 2d 407, 410 (S.D.N.Y. 2004). Defendants argue that PO Hughes is protected by qualified immunity because it was objectively reasonable for him to believe that the force he used was not greater than what was necessary under the circumstances. (Ds' Mem. at 12-13.) Defendants' argument is premised entirely on their assertion that "[i]t is undisputed in the instant matter that J.H. resisted arrest and was fighting with the police." (*Id.* at 12.) But that assertion is not undisputed. In fact, it is not in the record on this motion at all.

Defendants' rely exclusively on Exhibits B, C, and D of the Bushnell Declaration to establish that J.H. resisted arrest and fought with PO Hughes, but, as stated above, I am not considering Exhibit D, and I am not considering Exhibits B and C for their truth. Therefore, there is an insufficient basis at this stage to say that it is undisputed that J.H. resisted arrest or fought with the police.[5] Without more, Defendants have failed to establish that PO Hughes is entitled to qualified immunity, and because Defendants have not challenged the plausibility of Plaintiffs' claims of excessive force, battery, and assault, these three claims survive Defendants' motion to dismiss.

---

[5] This argument likely will have more traction at summary judgment.

9

### D. Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). This duty extends to an officer who fails to intervene "where that officer observes or has reason to know . . . that excessive force is being used." *Id.* "In order for liability to attach," however, "there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id.*

Plaintiffs allege that PO Hunt had an affirmative duty to intervene on J.H.'s behalf when PO Hughes "violently struck [J.H.] and pushed him to the ground without just cause." (SAC ¶ 18.) But Plaintiffs have failed to allege that PO Hunt had the opportunity to intervene, which is necessary in all cases, and especially so here, considering that the excessive force allegations stem from a push to the ground. "Even if [Plaintiffs'] pleading showed that the fall to the ground was the result of excessive force – a prerequisite to a failure to intervene claim – the allegations do not suggest that [the observing officer]," here, PO Hunt, "had a realistic opportunity to intervene to prevent the harm from occurring." *Portillo v. Webb*, No. 16-CV-4731, 2017 WL 4570374, at *7 (S.D.N.Y. Oct. 11, 2017), *report and recommendation adopted*, 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018). "In the absence of such an opportunity, [PO Hunt] cannot be liable for any failure to intervene." *Id.*[6] Accordingly, I grant Defendants' motion to dismiss Plaintiffs' second claim.

---

[6] Even if PO Hughes both struck and pushed J.H., there are still no facts plausibly suggesting that PO Hunt had time to intervene. To the contrary, it appears the altercation occurred in the moments when PO Hughes was attempting to handcuff J.H. (*See* SAC ¶ 10.)

### E. IIED

A claim of IIED under New York law has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *See Howell v. N.Y. Post. Co.*, 81 N.Y.2d 115, 121 (1993). Liability can be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 122 (internal quotation marks omitted). Accordingly, the pleading standard is "'rigorous, and difficult to satisfy,'" *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 604 (S.D.N.Y. 2011) (quoting *Howell*, 81 N.Y.2d at 121), and "[w]hether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance," *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).

Plaintiffs allege that PO Hughes "engaged in conduct toward [J.H.] that is extreme and outrageous so as to exceed the bounds of decency in a civilized society, namely, he violently attacked and threatened [J.H.]." (SAC ¶ 43.) This conclusory assertion is insufficient to state an IIED claim. First, Plaintiffs did not plead a single fact suggesting that PO Hughes threatened Plaintiff. Second, Plaintiffs' allegation of "[a] single act of force . . . even if determined to be unreasonable, does not reach the high threshold of 'extreme and outrageous conduct' required under New York law." *Harrell v. County of Nassau*, No. 10-CV-5894, 2013 WL 5439137, at *13 (E.D.N.Y. Sept. 27, 2013) (collecting cases where single acts of violence by officers do not rise to level of extreme and outrageous conduct). Third, even if PO Hughes's conduct were sufficiently outrageous, Plaintiffs' IIED claim would still be dismissed because "New York does

11

not recognize . . . IIED causes of action where the conduct underlying them may be addressed through traditional tort remedies." *Berrio v. City of N.Y.*, No. 15-CV-9570, 2017 WL 118024, at *7 (S.D.N.Y. Jan. 10, 2017). "IIED may be invoked only as a last resort," *Llerando-Phipps v. City of N.Y.*, 390 F. Supp. 2d 372, 381 (S.D.N.Y. 2005) (internal quotation marks omitted), and where "the conduct for the underlying claim may be redressed by way of traditional tort remedies such as battery," an IIED claim is "duplicative and must be dismissed on that basis," *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 315-16 (S.D.N.Y. 2005). Accordingly, Plaintiffs' IIED claim is dismissed.

### F. Deprivation of Society and Services

Under New York law, a claim for loss of services "is a derivative action and does not exist independent of the injured [relative's] right to maintain an action for injuries sustained." *Mohamed v. Marriott Int'l, Inc.*, 905 F. Supp. 141, 158 (S.D.N.Y. 1995); *see Dixon v. City of N.Y.*, No. 03-CV-343, 2008 WL 4453201, at *21 (E.D.N.Y. Sept. 30, 2008). Therefore, a plaintiff's derivative claim rises and falls with the injured plaintiff's underlying claims. *See Mohamed*, 905 F. Supp. at 158.

It is not entirely clear on what specific legal basis Ms. Humphreys brings her loss of services claim, but the SAC alleges that "[b]y reason of the *negligence* of the Defendants, the Plaintiff Charlene Humphreys[] was deprived of the society and services of the infant-Plaintiff and shall forever be deprived of said society and services." (SAC ¶ 51 (emphasis added).) Plaintiffs, however, do not bring any negligence claims on J.H.'s behalf in the SAC, which is a prerequisite for a derivative negligence claim. Additionally, Plaintiffs have not pleaded a single fact plausibly suggesting how Ms. Humphreys lost J.H.'s society or services. Accordingly, I dismiss the Plaintiffs' seventh cause of action.

## G. *Respondeat Superior*

Defendants argue that "[s]ince all of plaintiffs' state law claims fail, so too does their claim against the City of Mount Vernon under a theory of *respondeat superior*." (Ds' Mem. at 15.) Plaintiffs' state law claims for battery and assault, however, do not fail. And Defendants have provided no other ground on which to dismiss Plaintiffs' *respondeat superior* claims. Because "New York courts have held municipalities liable under a theory of *respondeat superior* for false arrest and assault and battery claims," *Graham v. City of N.Y.*, 928 F. Supp. 2d 610, 626 (E.D.N.Y. 2013) (collecting cases), and because Plaintiffs state plausible assault and battery claims, I deny Defendants' motion to dismiss Plaintiffs' third cause of action to the extent it pleads *respondeat superior* liability against the City of Mount Vernon based on the allegations of state law assault and battery against PO Hughes. The *respondeat superior* claim is dismissed, however, to the extent it is based on Plaintiffs' IIED and deprivation of society and services claims. It is also dismissed to the extent it is based on the § 1983 claim. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (municipality cannot be liable under § 1983 on *respondeat superior* theory).

## H. Abandonment

In their reply brief, Defendants argue that I should grant their motion to dismiss in its entirety because Plaintiffs have abandoned their claims by failing to oppose Defendants' motion to dismiss. (Ds' Reply at 2-3.) "'A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 392 (S.D.N.Y. 2013) (quoting *Martinez v. City of N.Y.*, No. 11-CV-7461, 2012 WL 6062551, at *1 (S.D.N.Y. Dec. 6, 2012)). In the abandonment cases that Defendants cite, however, the plaintiffs filed an opposition to the

defendants' motion to dismiss, but their opposition papers did not respond to certain arguments raised by the defendants. *See Chamberlain*, 986 F. Supp. 2d at 392; *Martinez*, 2012 WL 6062551, at *1; *Robinson v. Fischer*, No. 09-CV-8882, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010). And in each of those cases, the courts explained that even if certain claims had not been abandoned, they would still have been dismissed for failure to state a claim. *Chamberlain*, 986 F. Supp. 2d at 392; *Martinez*, 2012 WL 6062551, at *1; *Robinson*, 2010 WL 5376204, at *10 n.16. Thus, the cases are not analogous to the instant case in which Plaintiffs failed to oppose Defendants motion at all, but certain claims were plausibly pleaded.

Failure to oppose does not alone justify dismissal. *Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010). "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading," and if it "is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000). Thus, I do not conclude that Plaintiffs' have abandoned the case.

But Plaintiffs' counsel's repeated failures to comply with this Court's orders are troubling and may result in dismissal for failure to prosecute if they continue. *See Orbital Pub. Grp., Inc. v. Bank of Am., N.A.*, No. 11-CV-3065, 2012 WL 1309187, at *2 (S.D.N.Y. Apr. 16, 2012). Accordingly, Plaintiffs are ordered to advise by April 29, 2019, whether they intend to pursue the case. Failure to do so will result in dismissal for failure to prosecute. Absent exceptional circumstances, I will not grant an extension.

## IV. <u>LEAVE TO AMEND</u>

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to

14

amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment . . . .'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have already amended twice, after having the benefit of two pre-motion letters from Defendants, (Docs. 8, 17), as well as the Court's observations during a pre-motion conference, (Minute Entry dated Aug. 13, 2018). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (alteration, footnotes, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of

15

the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, Plaintiffs have not asked to amend or suggested that they are in possession of facts that would cure the deficiencies identified in this opinion. Accordingly, the Court declines to grant leave to amend *sua sponte*. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted); *TechnoMarine SA v. Giftports, Inc*., 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request that was not made."); *id.* (proper to dismiss with prejudice where no indication plaintiff could or would provide additional allegations leading to different result).

## V. CONCLUSION

For the foregoing reasons, Defendants' unopposed motion to dismiss is GRANTED IN PART and DENIED IN PART. Further, Plaintiffs are ordered to advise no later than April 29, 2019, whether they intend to pursue this case. If so, it will proceed only on Plaintiff J.H.'s first, fourth, and fifth causes of action against PO Hughes, and on J.H.'s third cause of action against the City of Mount Vernon. The Mount Vernon Police Department and PO Hunt are dismissed

from this case, as is Ms. Humphreys as a Plaintiff in her individual capacity. The Clerk of the Court is respectfully directed to terminate these parties and the pending motion. (Doc. 25.)

**SO ORDERED.**

Dated: April 15, 2019
      White Plains, New York

                                                          CATHY SEIBEL, U.S.D.J.